OPINION. Black, Judge-. Petitioners primarily contend that, under sections 23 (s), 122, and 189 of the Internal Revenue Code, they are entitled to carry over the 1940 loss of the partnership of $87,808.68 as a “net operating loss carry-over” in computing their individual tax liabilities for the calendar year 1941. Subsection (s) and sections 122 and 189 were all inserted in the code by section 211 of the Revenue Act of 1939. Section 122 was later amended by section 153 of the Revenue Act of 1942. As thus explained, the material provisions of these sections are set forth in the margin.[1] The respondent contends that the loss of $95,750 on the sale of the 100 futures contracts sustained by the partnership in 1940 was a “short-term capital loss” as that term is defined in code section 117. If that be true, and since the partnership had no “short-term capital gains” during the calendar year 1940, there would be no net operating loss under 122 (a), no net operating loss carry-over under 122 (b), and no net operating loss deductions under 122 (c), for the reason that under the exceptions and limitations provided in 122 (d) “the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains” and, therefore, instead of the deductions exceeding the gross income of the partnership for 1940 under section 122 (a) by $87,808.68, the gross income would exceed the deductions by $7,941.32. Petitioners, however, contend that the loss of $95,750 was not a short term capital loss, but was an ordinary business loss, or, in the alternative, an ordinary and necessary business expense deductible under code section 23 (a), as amended by section 121 of the Revenue Act of 1942, or as additional cost of goods actually taken into inventory during the pear 1940. The material provisions of code sections 117 and 23 (a), as amended, are also in the margin.[2] Was the loss of $95,750 on the sale of the 100 futures contracts a short term capital loss ? The answer depends upon whether such contracts were or were not “capital assets” as that term is defined in code section 117. Under this definition the term “means property held by the taxpayer” with certain specified exceptions. These exceptions are (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or (2) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (3) property used in the trade or business of a character which is subject to the statutory allowance for depreciation. Petitioners contend that the contracts fall within the first exception as representing property of a kind which would properly be included in the inventory of the partnership if on hand at the close of the year. They argue that if, as originally intended, the partnership lmd taken delivery of the wool tops, and the wool tops had been on hand at the close of the year, there would be no question as to the inclusion in the inventory of the wool tops. Because of changed conditions, namely, the influx of Cape wools, and the availability again of piece goods, the partnership decided not to take delivery of the wool tops, but to dispose of the futures contracts instead. Petitioners further argue that it is difficult to see a legal or practical justification for drawing a distinction between the tax treatment to be given losses realized on the disposition of materials physically taken into inventory and losses realized where futures contracts are disposed of before actual receipt of the commodities specified in the contracts due to a change in conditions over which the partnership had no control. In Anna M. Harkness, 1 B. T. A. 127, 130, this statement appears: It seems to us to be fundamentally unsound to determine income tax liability by wbat might have taken place ratber than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. United States v. Isham, 17 Wall. 496. In the instant proceedings what actually occurred was a purchase and sale of futures contracts. It is well settled that such contracts are not to be included in the inventory. See sec. 19.22 (c)-1, Regulations 103; A. R. R. 100, C. B. No. 3, p. 66; A. R. M. 135, C. B. No. 5, p. 67; Commissioner v. Covington, 120 Fed. (2d) 768, 771; certiorari denied, 315 U. S. 822; Tennessee Egg Co., 47 B. T. A. 558. In fact the partnership did not include the contracts in its inventory at the close of the year 1939 and it would have been improper to have done so. The only account it had on its books at that time relative to the contracts in question was the account with E. A. Pierce & Co. showing a debit balance of $75,000 for the margins that were up at that time. Neither were the futures contracts stock in trade nor property held primarily for sale to customers in the ordinary course of the partnership’s trade or business. Commissioner v. Covington, supra. It is obvious that the contracts were not property of a character which is subject to the statutory allowance for depreciation, and we do not understand petitioners to so contend. The contracts were held by the partnership for less than 18 months. It follows, therefore, that the loss of $95,750 was a short term capital loss, unless it resulted from a true hedge as that term is commonly and usually understood. That brings us to petitioners’ alternative contention that the loss was an ordinary and necessary business expense, because it was incurred in hedging operations. It has long been the practice of the Commissioner and the courts to treat losses from hedging transactions as essentially insurance and deductible as ordinary and necessary business expense rather than losses from dealings in capital assets. See G. C. M. 17322, C. B. No. XV-2, p. 151; Ben Grote, 41 B. T. A. 247; Commissioner v. Farmers & Ginners Cotton Oil Co., 120 Fed. (2d) 772; Kenneth S. Battelle, 47 B. T. A. 117. “Losses from true hedges are allowed in full.” Commissioner v. Farmers & Ginners Cotton Oil Co., supra. In that case the Fifth Circuit also said: A hedge is a form of price insurance; it is resorted to by business men to avoid the risk of changes in the market price of a commodity. The basic principle of hedging is the maintenance of an even or balanced market position. To exercise a choice of risks, to sell one commodity and buy another, is not a hedge; it is merely continuing the risk in a different form. * * * In G. C. M. 17322, supra, relating to the treatment of hedging transactions for Federal income tax purposes, after describing the hedging customs of a certain cotton textile manufacturer, it is said: Such hedges, which eliminate speculative risks due to fluctuations in the market price of cotton and thereby tend to assure ordinary operating profits, are common trade practices and are generally regarded as a form of insurance (the only kind available as protection against such risks) necessary to conservative business operation. Where futures contracts are entered into only to insure against the above-mentioned risks inherent in the taxpayer’s business, the hedging operations should be recognized as a legitimate form of business Insurance. As such, the cost thereof (which includes losses sustained therein) Is au ordinary and necessary expense deductible under section 23 (a) of the Revenue Act of 1934 and corresponding provisions of prior Revenue Acts. * * * Petitioners contend that the partnership’s situation relative to the futures contracts was similar to the situation relative to the “futures transactions (short) in cotton during 1936” in Kenneth S. Battelle, supra. We fail to see any similarity between the two situations. It is true that on its books of account the partnership on December 31, 1940, charged the loss of $95,750 to “Woolens Purchases” and credited E. A. Pierce & Co. with a like amount, with the explanation: “Cost of hedgings to protect purchases of woolens.” Petitioner was and is a manufacturer of men’s suits from piece goods purchased from worsted mills. The partnership sold its finished products to retailers who were contracted seasonably by its various salesmen. There is no evidence that petitioner used a method of hedging against present sales of its clothing suits by the purchase of future wool tops contracts. On the contrary, the evidence seems to show conclusively that the purchase of the 100 wool tops contracts in September 1939, which it disposed of in February 1940, was not a balancing transaction against sales of clothing, but was an isolated transaction and one made because of the more or less panicky condition which arose after the outbreak of the war in September 1939 respecting the future supply of woolen piece goods. The transaction turned out badly for petitioner and the loss which it suffered could be carried over as an ordinary business net loss and used as a deduction in the next taxable year were it not for the provisions of the the statute which we have quoted in the margin. In view, however, of the statutory definition of capital assets, we feel we must hold that the wool tops contracts were capital assets and that the partnership’s transactions in these contracts did not represent hedging transactions as that term is ordinarily understood, and petitioners’ loss in the transactions must be adjudged a shore term capital loss. Commissioner v. Farmers & Ginners Cotton Oil Co., supra. Certainly, in the latter case, the transactions of the taxpayer more nearly resembled a true hedge than those of the instant case, yet the court held against the taxpayer. It follows from what we have said that the respondent’s several determinations in these consolidated proceedings must be sustained and that petitioners are not entitled to deduct from their 1941 income any net operating loss carry-over on account of the partnership’s wool tops futures contracts. Reviewed by the Court. Decisions will be entered for the respondent, Oiter, «dissents. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : ******* (s) Net Operating Loss Deduction. — For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122. SEC. 122. NET OPERATING LOSS DEDUCTION. (a) Definition of Net Operating Loss. — Ar used in this section, the term “net operating loss” means the excess of the deductions allowed by this chapter over the gross Income* with the exceptions and limitations provided in subsection (d). (b) Amount of Carry-Back and Carry-Over.— (1) Net operating loss carry-back. — If for any taxable year beginning after December 31, 1941, * * * (2) Net operating loss carry-over. — If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss ourr.v-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be * * • (c) Amount of Net Operating Loss Deduction. — The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1)» (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in the case of a corporation * * * (d) Exceptions and Limitations. — The exceptions and limitations referred to in subsections (a), (b), and <c) shall be as follows: ******* (4) Long-term capital gains and long-term capital losses shall be taken into account without regard to the provisions of section 117 (b). As so computed the amount deductible on account of long-term capital losses shall not exceed the amount includible on account of the long-term capital gains, and the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains: * • * SEC. 189. NET OPERATING LOSSES. The benefit of the deduction for net operating losses allowed by section 23 (s) shall not be allowed to a partnership but shall be allowed to the members of the partnership under regulations prescribed by the Commissioner with the approval of the Secretary. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter— (1) Capital Assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the Inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) ; **»**»• (3) Short-term capital loss. — The term “short-term capital loss” moans loss from the sale or exchange of a capital asset held for not more than 18 months, if and to the extent such loss is taken into account in computing net income. SEC.-23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : (a) Expenses.— (1) Trade or business expenses.— (A) In General. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business • • •